Frank Sparling, Appellant, *v.* Louis B. Wade and Others, Copartners Doing Business under the Firm Name and Style of Wade, Templeton & Co., Respondents.

First Department, November 14, 1924.

**Principal and agent** — action to recover on stock transactions with defendants, stock brokerage firm — plaintiff alleged order to sell certain stock, to remit difference between amount received and amount he owed firm and to return other stock held by firm — sale was not made and subsequently stock was sold at lower price — error to dismiss complaint — whether order to sell was given or subsequently waived were questions of fact — defendants were bound to execute sale order though amount received would not equal plaintiff's indebtedness — representations by defendants as to value of stock ordered sold does not affect action — counterclaim for deficiency on sale disallowed — price paid by defendants for stock to take place of scrip held by it not recoverable.

In an action based on certain stock transactions had between the plaintiff and the defendants, a stock brokerage firm, to recover the balance due, it was error to dismiss the complaint at the close of the case, since it appears that the complaint alleges, and plaintiff sought to prove, that the defendants had in their possession certain stocks belonging to the plaintiff; that the plaintiff was indebted to the defendants in a stated amount; that the plaintiff directed the defendants to sell a part of the stock and after taking enough of the receipts therefrom to pay plaintiff's indebtedness to them to remit the balance and to turn over to the plaintiff the other stocks held by the defendants; that the defendants did not execute the sale order at the time it was given but thereafter, when the plaintiff refused to increase his margin, sold the stocks at a lower price than they were listed on the day the order was given; and that the evidence raises a doubt as to whether or not the sale order was actually given by the plaintiff.

Under the circumstances, the court should have submitted to the jury the question whether or not the plaintiff gave the sale order and whether or not if the sale order was given, it was waived by the subsequent dealings between the parties.

The fact that the sale order also directed the defendants to remit to the plaintiff the balance remaining after canceling his debit with the defendants and to return other securities which the defendants held, could not have been executed in full, since the amount of money that would have been received from the sale

of the stock which the plaintiff ordered to be sold would not have covered his debit balance, did not relieve the defendants from the duty of executing the order so far as it related to the sale of the stock, for to that extent the order was separable. Therefore, the loss accruing from the failure of the defendants to sell the stock at the time the order was given must be borne by them, unless the order was subsequently waived.

The representations made by the defendants at the time the sale order was given that the value of the stock ordered sold would more than cover the plaintiff's debit balance cannot affect the defendants' liability, since the action is not based on any such misrepresentation.

The counterclaim by the defendants which is based in part upon a deficiency upon the sale of the stock was not established, since such deficiency would not have existed if the sale order given by the plaintiff had been carried out and, furthermore, that part of the counterclaim in which the defendants claim the right to recover the amount of money paid for twenty-five shares of stock to take the place of scrip belonging to the plaintiff and held by the defendants as security was not established, since, though the scrip could not be transferred without the plaintiff's signature, it was not shown that the plaintiff refused to indorse the scrip and, furthermore, the scrip was not tendered to the plaintiff upon the trial. The defendant had the right to sell the collateral which it actually had and not to sell other collateral which it was required to purchase in order to satisfy the plaintiff's indebtedness.

APPEAL by the plaintiff, Frank Sparling, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 7th day of November, 1923, upon the dismissal of the complaint at the close of the entire case, and upon the verdict of a jury rendered by direction of the court, as to the counterclaim.

*Milton Mayer* [*Goodman Block* of counsel], for the appellant.

*Herbert P. Queal,* for the respondents.

SMITH, J.:

The plaintiff brings this action at law upon certain stock transactions had between the plaintiff and the defendant which is a stock brokerage partnership. Upon October 4, 1920, the plaintiff had with the defendant the following securities: 155 Sinclair Oil; 100 Endicott-Johnson; 100 American International Corporation; 50 Libby, McNeill & Libby. At the high point on that day the value of this stock was $19,742.50. At the lowest quotation upon that day the value of the stock was $19,121.25. There was a debit balance as against the plaintiff with the defendant of $16,309.68. The plaintiff swears that upon that day he had a talk with one Hibbard, a representative of the defendant, who told him that the 100 shares of Endicott-Johnson and the 100 shares of American International Corporation were then worth $18,000. This would be about $1,700 over and above his indebtedness. He then swears that he ordered the Endicott-Johnson and the American Inter-

national Corporation stock sold, and that he be sent a check for the balance due over and above his debit balance, and also that the defendant send him his Sinclair stock and the Libby, McNeill & Libby. This conversation said to have passed was with Hibbard. Hibbard was in court but was not called as a witness to contradict this statement. Neither the Endicott-Johnson nor the American International Corporation stock was sold, and the accounts were carried further, and it seems that other stocks were purchased and placed in the account of the plaintiff, as plaintiff swears, without his authorization.

Upon November 8, 1920, the defendant notified the plaintiff by letter that his account needed further margin of $4,400 and demanded immediate remittance; and upon November ninth a letter was written to the effect that if the remittance was not forwarded by November tenth, the stock would be sold. Upon November 10, 1920, the plaintiff went into the office of the defendant, and it is claimed by the defendant that the plaintiff's time was extended until noon of that day. The plaintiff swears, however, that he refused to furnish further margin and claimed that the firm was indebted to him. Upon November eleventh this stock was sold and there was found to have been a deficiency of $145.49. It seems that this Libby, McNeill & Libby stock consisted of twenty-five shares of stock and twenty-five shares of scrip which could not be turned into stock without the indorsement thereupon of the plaintiff. The plaintiff had given authority by power of attorney to the defendant to sell stock. When the defendant came to make delivery of fifty shares of Libby, McNeill & Libby, only the twenty-five shares that had been regularly issued were available, and the defendant was compelled to purchase twenty-five additional shares in order to make a good delivery. This stock was purchased at the sum of $262.50. The counterclaim of the defendant consists of this deficiency in the sale of this stock and also of the moneys expended for this twenty-five shares of Libby, McNeill & Libby stock which the defendant did purchase to make good its sale of fifty shares made the day before. In this state of the case, with these facts existing as shown in the evidence, the court dismissed the complaint and directed a verdict against the plaintiff upon the defendant's counterclaim for the full amount claimed. It is from the judgment that this appeal is taken.

If the order was given upon October fourth, as sworn to by the plaintiff, to sell the Endicott-Johnson and the American International Corporation stock, the defendant was bound to sell it, and for failure to do so was liable in damages. The evidence in this case shows that these stocks depreciated from October,

fourth to November eleventh, at the time of the actual sale, to an amount upwards of $1,600. Whether the plaintiff did, in fact, give such an order was a question of fact for the jury to decide. While it is not contradicted by Mr. Hibbard, who represented the defendant, the subsequent dealings, as sworn to, between the plaintiff and members of the firm clearly raise a doubt as to whether this order was in fact given, and the plaintiff cannot claim to have established as matter of law upon his sole testimony that the orders were given. Whether the order, if given, was thereafter waived by the dealings between the parties was also a question of fact which should properly have been submitted to the jury. It is claimed, however, that this order was for the sale of these two stocks, for the remission of a check to cover the balance over and above the indebtedness of the plaintiff to the firm, and the return of the two remaining stocks, the Sinclair Oil and the Libby, McNeill & Libby stock; and it is further claimed, inasmuch as the sale of these two stocks, so ordered, would not yield a balance, and as the defendant could not release the Sinclair Oil and the Libby, McNeill & Libby until the full balance was paid, that the order was not effective to require the defendant to sell these two stocks. I cannot agree to this proposition. If a customer orders the sale of stock, I think the broker is required to sell it, even though that order be connected with other orders it cannot fulfill. The order is to that extent separable, and the defendant in this case, if the order was given, was required to sell these stocks, and for the loss accruing from his failure so to do, the defendant is liable, unless the order to sell was waived by the plaintiff through any negotiations had after the failure to sell the stock. The return to the plaintiff of a check for the balance or the return of the other securities was not made a condition of the order to sell the two stocks named. In these stock transactions there is no opportunity for explanation and adjustment. The order must be executed promptly, and it would be an unreasonable requirement to hold that an order was not effective simply because some other order was given at the same time which could not be carried out, if it were not made a condition of the order for the sale of the stock. In view of the nature of dealing in these transactions, it would in my judgment be very mischievous to hold that this order was not separable and that the order to sell these two stocks should not have been carried out. As stated before, however, whether the order was given, or whether if given it was thereafter waived, are questions of fact which should have been submitted to the jury; and the court was not authorized to direct a verdict against the plaintiff thereupon. I have not discussed the alleged repre-

sentation of Hibbard to the effect that these stocks were worth $18,000. The only effect that such a representation could have upon the cause of action presented by the plaintiff's complaint lies in the claim of justification for this double order to sell the two stocks named, and a demand for a check for the balance over and above the amount owing by the plaintiff and the return of the two stocks which remained unsold.

I am unable to see how these representations, if made, can either add to or detract from the defendant's liability here. Such a representation made at that time might have induced the plaintiff to order a sale, but the plaintiff's complaint is not of any such inducement, but of the fact that the sale was not made as ordered.

It follows, also, that the counterclaim was not established. The counterclaim was based in part upon a deficiency upon the sale of November eleventh, which deficiency would not have existed if the order of the plaintiff had been carried out to sell these stocks upon October fourth. Also, the defendant is not authorized to recover from the plaintiff the moneys paid for these twenty-five shares of Sinclair Oil. The claim of the defendant is that the scrip which it has in its possession now belongs to the plaintiff, and that he may have it at any time. But it was not tendered upon the trial, and until the plaintiff should refuse to indorse the scrip, it is difficult to see how the plaintiff should be made liable for the purchase of further stock to take its place. The defendant had the right to sell the collateral which it actually had and not to sell other collateral which it was required to purchase in order to satisfy the plaintiff's indebtedness.

The judgment should, therefore, be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., MERRELL, FINCH and MARTIN, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.